## MARRIAGE—INSANITY.

[Hamilton Circuit Court, March, 1893.]

GOODHART, GUARDIAN V. EDITH SPEER.

RATIFICATION OF A MARRIAGE SOLEMNIZED WHILE ONE OF THE PARTIES WAS INSANE.

> Where a person has been adjudged insane and a guardian appointed, and such person subsequently marrie' and then by a proceeding in the probate court is again restored to sanity after which he ratifies his marriage: *Held*, that where the evidence clearly shows that at no time since such person was adjudged insane has he been sane or possessed of sufficient mental capacity to be able to ratify the marriage contract, and, therefore, such marriage will be annulled at the suit of the guardian.

APPEAL.

SWING, J.

This is an action on appeal from the court of common pleas.

The only question controverted, is one of fact, and that is, whether John B. Ransley was sane at any time subsequent to his marriage to the defendant, Edith Speer—which marriage took place in New York on the —— day of ——, and while sane ratified said marriage.

At the time of this marriage Ransley was under guardianship, the probate court of Hamilton county having adjudged him insane and appointed a guardian for him, which occurred in ——, 189–. Afterwards, in the fall of the same year, in the month of ——, Ransley came to Cincinnati, in company with his wife and a Miss Lathrop, and employed counsel; and upon a hearing the probate court of said county found that Ransley was restored to sanity, and removed the guardian. Shortly after this he became hopelessly insane, and is now confined in a private asylum. There is no question but what, if Ransley had the mental capacity to ratify this marriage, he did so by words and consent. The probate court on the evidence principally of Drs. Richardson and ——, found Ransley sane. The same doctors have given their evidence in this case. They are both men of distinction, and their evidence is entitled to great consideration. They both believed Ransley sane when they saw him. They had not been long acquainted with him and their judgment was formed upon facts elicited from one or two examinations of him, taken in connection with his history. In addition to this, we have had the evidence of the attorneys who transacted business for him about the time he was declared sane by the probate court and one or two friends. These all thought him sane at that time. As opposed to this evidence we had the testimony of Drs. Buck, Ricketts Cook and Taylor, besides acquaintances who saw him about this time.

Dr. Buck, who impressed us as a man of great ability and experience, as well as a very fair witness, testified to the effect 'that he had known Ransley intimately for twenty years, during which time he had been his physician, and during which time he had had frequent occasions to examine him and prescribe for him. He had seen him shortly before he was declared insane by the probate court, and he had treated him shortly afterwards. He said he had progressive paresis, and he was thoroughly

satisfied that it was impossible that he could ever have been sane after the time he was adjudged insane.

Dr. Cook testified that when he first saw him he was suffering from progressive paresis, and that the disease had been of at least a year's standing, and that probably it was four or five years since its commencement.

Dr. Ricketts testified that he was called upon to treat him shortly after the time in controversy—treated him for quite a while; that when he found him he was suffering from progressive paresis of long standing, and that he could not, in his opinion, have been sane at that time. To the same effect was the testimony of Mr. ——, an old acquaintance, at whose house Ransley and wife took their meals at the time in question.

A great number of letters of Ransley's written at times previous to the time when sanity was claimed to exist, were also in evidence. At the time Ransley was transacting business with the lawyers who testified, he was always in company with his wife and Miss Lathrop, and neither the evidence of the lawyers or of Drs. Richardson and —— show a mind free from all doubts as to sanity. The doctors say he was peculiar and nervous, and the lawyers talked only about their business affairs with him; and while he was nervous, excitable and very talkative, they saw nothing to indicate insanity.

But the testimony of Drs. Buck, Ricketts and Cook carried conviction to our mind of this fact, that at no time from the time when Ransley was declared insane by the probate court has he ever been sane or possessed of sufficient mental capacity to be able to ratify the marriage contract in question.

A decree will be entered in accordance with this finding.

*C. D. Robertson*, for the Guardian.

*Robert B. Bowler*, for the Defendant.